FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2014 DEC 19   AM 11 49
STEPHAN HARRIS, CLERK
CHEYENNE

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

LEXINGTON INSURANCE COMPANY,

        Plaintiff,

        vs.                            Case No. 12-CV-070-J

PRECISION DRILLING COMPANY, LP,
fka GREY WOLF DRILLING COMPANY, LP;
UPSTREAM INTERNATIONAL, LLC; LLOYD'S
OF LONDON SYNDICATE #4711 aka ASPEN
SYNDICATE #4711; LLOYD'S OF LONDON
SYNDICATE #33; LLOYD'S OF LONDON
SYNDICATE #1209; and ACE GLOBAL MARKETS,

        Defendants.

---

**ORDER DENYING PRECISION DRILLING COMPANY'S MOTION FOR SUMMARY JUDGMENT, GRANTING UPSTREAM INTERNATIONAL, LLC'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING LEXINGTON INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

---

The motion for summary judgment filed by all defendants[1] except Upstream International

LLC (Doc. 83), the motion for summary judgment filed by plaintiff (Doc. 87), and the motion for

summary judgment filed by Upstream International (Doc.85) have come before the Court for

consideration . The Court has reviewed the parties' submissions, the applicable law, and all matters

---

[1]Sometimes referred to as the Lloyd's group of defendants. This collective reference includes
Precision and London Underwriters unless otherwise specified.

1

of record and is fully advised.  For the reasons stated below, the Court FINDS and ORDERS as follows:

## Background

This cases arises out of an accident that occurred in December of 2008, in which Darrell Jent suffered serious injury.  Mr. Jent was a consultant pursuant to a contract with Upstream.

Ultra Resources, Inc., formerly known as Ultra Petroleum (Wyoming), Inc., was the leaseholder of the wellsite located in Sublette County, Wyoming.  In January of 2007, Ultra entered into a Master Services Agreement, with Upstream International, LLC, which was a contract to manage the wellsite (Ultra-Upstream contract).  October 16, 2007, Upstream entered into a contract with Jent to provide consultant services at that wellsite.  Ultra (the leaseholder) contracted with Precision for drilling operations on the wellsite pursuant to a contract dated March 25, 2008, identified here as the Ultra-Precision contract.

Precision was the owner and operator of the Grey Wolf Drilling Rig #841.  The rig was used to perform Precision's contractual obligations as set forth in the Ultra-Precision contract.  Upstream assigned Jent, an independent contractor, to Rig #841 to fulfill contractual obligations in the Ultra-Upstream contract.  Jent's task was described as ensuring sound management of Rig #841 during operations.  On December 27, 2008, the rig was being rigged down in preparation for a move offsite.  During the rig down, Jent sustained injuries in a fall from the rig's stairway.  Jent sued Precision for his injuries and that case was ultimately settled for $3,000,000.00 during mediation in April of 2012.  See Doc. 88, Exhibit 7, United States District Court for the District of Wyoming, *Jent v. Precision*

*Drilling Company, LP,* Case No. 10-CV-285-ABJ, Complaint and Jury Demand filed December 30, 2010. Jent's suit against Precision is referred to here as the underlying action.

Upstream, which had been engaged to provide wellsite management services to Ultra under the Master Services Agreement, was insured by Lexington on a Commercial General Liability Policy Occurrence Form, Policy No. 001751654, effective August 19, 2008 through August 19, 2009 (the Lexington Primary Policy). Lexington also insured Upstream on Commercial Umbrella Liability Policy Occurrence Form, Policy No. 001776315, effective August 19, 2008 through August 19, 2009 (the Lexington Umbrella Policy).

London Underwriters insured Grey Wolf, Inc., now known as Precision, for liability up to $1,000,000 per occurrence under Policy No. MD0078308(1), effective June 2, 2008 to June 2, 2009 (the London Underwriters' Primary Policy). London Underwriters insured Grey Wolf, Inc., now known as Precision, for excess liability for up to $10,000,000 per occurrence under Policy No. MD0063081(1), effective June 2, 2008 to June 2, 2009 (the London Underwriters' Excess Policy).

The $3,000,000 settlement agreement between Jent and Precision reached in April 2012 was paid by London Underwriters and Precision. Although Lexington had provided the defense in the underlying action, Lexington did not contribute to the Jent settlement payment. The Jent settlement was memorialized in a Confidential Release and Settlement Agreement on June 5, 2012. On April 2, 2012 the instant action was brought by Lexington, seeking a declaratory judgment against Precision, London Underwriters and Upstream.

The Lloyd's group of defendants asserts that the Ultra-Upstream Contract complies with Wyoming law. Under the Ultra-Precision contract, the Lloyd's group of defendants asserts that

Precision is a contractor and an additional insured as identified in Section 3 of the Ultra-Upstream Master Services Agreement. These defendants contend that the Wyoming Anti-Indemnity Statute does not preclude the parties from entering into binding contractual obligations to purchase insurance policies with additional insured provisions. This argument in substance seeks to shift insurance/indemnification obligations arising from Precision's negligent conduct from Precision's own insurer to Upstream's insurer, Lexington, as an additional insured. Lexington responds by saying that Precision is not covered as an additional insured on the Upstream liability policy, that the Wyoming Anti-Indemnity Statute precludes coverage of Precision for the underlying action, and that Precision's own insurer should have defended and responded in the underlying action based on primary and excess liability policies issued to Precision. In this action, Lexington seeks reimbursement for amounts paid to defend Precision in the underlying action (under a reservation of rights), a declaration of non-coverage and a declaration that it has no obligation to pay for Precision's liability arising out of or related to the damages alleged in the *Jent* personal injury action.

The pivotal question here is whether the Wyoming Anti-Indemnity Statute, Wyo. Stat. § 30-1-131 (2013 LexisNexis Edition), precludes coverage of Precision for the underlying action and indemnification for the settlement amounts paid to Jent. Lexington argues that Precision's own liability insurer, London Underwriters, should have responded to the underlying action based upon primary and excess liability policies issued to Precision. Precision contends it is entitled to be reimbursed by Lexington for the cost to settle the underlying action and for attorneys' fees incurred in that underlying action, as well as fees incurred here and interest.

4

## Standard of Review

Fed. R. Civ. Rule 56(a) provides that summary judgment may be granted if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law. See also *Yousuf v. Cohlmia*, 741 F.3d 31, 37 (10th Cir. 2014).   Because this is a

diversity case, the Court must apply the law of the state of Wyoming.   *Mid-Continent Casualty*

*Company v. Circle S Feed Store, LLC*, 754 F.3d 1175, 1178 (10th Cir. 2014).

## Discussion

The Master Service Agreement between Ultra Resources, Inc. (the Company) and Upstream

(the Contractor) includes provisions regarding insurance and indemnity.[2]   Doc. 84, Exhibit A.

3. INSURANCE:

3.1 <u>Coverage</u>. [Upstream] agrees to procure and maintain, at its sole expense, with solvent insurers and insurers acceptable to [Ultra] policies in favor of [Ultra] its subsidiary, affiliated and related companies, and their working interest owners, co-lessees, co-owners, contractors and subcontractors and any others for whom any of the foregoing may be acting; and the agents, directors, officers, employees of any one or more of the above named or described parties (hereinafter all collectively referred to as "Company" [Ultra]) in the minimum amounts outlined in the Exhibits attached hereto and made a part hereof Exhibit "A" and Exhibit "B".   It is expressly understood and agreed that the insurance provisions of this Contract, including the minimum required limits of Exhibit "A" and Exhibit "B", are intended to assure that certain minimum standards of insurance protection are afforded by [Upstream] and the specifications herein of any amount or amounts shall be construed to support, but in no way limit, the liabilities and indemnity obligations of [Ultra]. Coverage under all insurance required to be carried by [Ultra] will be primary insurance and exclusive of any other existing valid and collectible insurance and each policy will name [Ultra] as additional insured and waive subrogation against [Ultra] and its Insurers.

---

[2]In an effort to minimize confusion, party names have been substituted for "Contractor" [Upstream] and "Company" [Ultra].

\* \* \*

4. INDEMNITY:

    4.1 [Ultra] agrees to defend, indemnify and hold [Upstream], its subsidiary and affiliate companies, their agents, employees, directors, officers, servants, and insurers, harmless from and against any and all losses, claims, demands, liabilities or causes of action of every kind and character, in favor of any person or party, for the injury to or illness or death of any employee of [Ultra] or its joint interest owners, which injury, illness or death arises out of or is incident to the work performed under this Contract, and regardless of the cause of such injury, illness or death, even though caused in whole or in part by a pre-exiting defect, indemnitees' negligence or strict liability, or other legal fault of indemnitees. [Ultra] shall fully defend any such claim, demand or suit at its sole expense, even if the same is groundless.  This indemnity shall be limited to the extent necessary for compliance with applicable state and federal laws. [Ultra] shall be liable for and shall protect, defend, indemnify and hold [Upstream] harmless from and against all losses, claims, demands, liabilities or causes of action of every kind and character arising in connection with the performance of this Contract or any work order or similar document in favor of third parties when such claims are attributable to the fault or negligence of [Ultra], its agents, officers, directors, employees or invitees or [Ultra's] subcontractors, their agents, officers, directors, employees or invitees.

    4.2 [Upstream] agrees to defend, indemnify and hold [Ultra] (as previously defined in paragraph 3.1), its joint interest owners, its subsidiary, and affiliate companies, their agents, employees, directors, officers, servants, and insurers, harmless from and against any and all losses, claims, demands, liabilities or causes of action of every kind and character, in favor of any person or party, for injury to or illness or death of any employee of [Upstream] or any employee of subcontractors of [Upstream], which injury, illness or death, even though caused in whole or in part by a pre-existing defect, indemnitees' negligence or strict liability, or other legal fault of indemnitees, [Upstream] shall fully defend any such claim, demand or suit at its sole expense, even if the same is groundless.  This indemnity shall be limited to the extent necessary for compliance with applicable state and federal laws. [Upstream] shall be liable for and shall protect, defend, indemnify and hold [Ultra] harmless from and against all losses, claims, demands, liabilities or causes of action of every kind and character arising in connection with the performance of this Contract or any work order or similar document in favor of third parties when claims are attributable to the fault or negligence of [Upstream], its agents, officers, directors, employees or invitees of [Upstream's] subcontractors, their agents, officers, directors, employees or invitees.

6

4.3 Each party shall notify the other party immediately of any claim, demand, or suit that may be presented to or served upon it by any party arising out of or as a result of work performed pursuant hereto, affording such other party full opportunity to assume the defense of such claim, demand, or suit and to protect itself under the obligations of this Section.

Exhibit C included with Document 84 is not legible. What appears to be the same document, the drilling contract between Ultra Resources, Inc. (the Operator) and Grey Wolf Drilling Company, L.P., ( the Contractor) (hereafter Precision), is included in Lexington's brief in support of its motion for summary judgment at Document 88, Exhibit 3, which is a somewhat more legible copy of this document.[3] Pertinent provisions of this March 2008 contract relating to insurance and indemnity include the following:

13. INSURANCE (at Page 4A)
         During the life of this Contract, [Precision] and [Ultra] shall each at their own sole respective expense maintain, with an insurance company or companies authorized to do business in the state where the work is to be performed or through a self-insurance program, insurance coverages of the kind and in the amounts set forth in Exhibit "A", insuring themselves as well as all liabilities specifically assumed by [Precision] and [Ultra] in Paragraph 14 of this Contract. The parties shall, if requested to do so by the other party, procure from the company or companies writing said insurance a certificate or certificates that said insurance is in full force and effect and that the same shall not be canceled or materially changed without thirty (30) days prior written notice to the affected party. For liabilities assumed hereunder by each party, its respective insurance shall be endorsed to provide that the underwriters waive their right of subrogation against the other party. If requested, the party procuring insurance shall promptly deliver complete and legible copies of all insurance policies, including all declarations, endorsements, and amendments thereto. [Precision] will add to its insurance policy as additional assured, excluding worker's compensation, all those indemnified in 14.8 on a broad additional assured form. Also, [Precision] and its insurance companies shall waive subrogation against all of those indemnified under 14.8.

---

[3]Again, party names will be substituted for "Operator" [Ultra] and "Contractor" [Precision] hereafter.

13.1 INSURANCE PROCUREMENT

The indemnity and indemnity-supporting obligations imposed by certain provisions of this Contract and other insurance procurement and maintenance of obligations herein are distinct from, separate and apart from, and independent of each other. Fulfillment of the indemnity and indemnity-supporting insurance obligations required under certain provisions shall not satisfy insurance procurement obligations contained elsewhere, and vice versa.

Notwithstanding the foregoing, [Precision's] insurance shall be primary and non-contributory to any insurance obtained by [Ultra] or any person or entity indemnified under Section 14.8.

Notwithstanding the foregoing, [Precision's] insurance supporting its indemnity obligations shall be primary and non-contributory to insurance obtained by [Ultra] or any person or entity indemnified under Section 14.8.

14. RESPONSIBILITY FOR LOSS OR DAMAGE, INDEMNITY, RELEASE OF LIABILITY AND ALLOCATION OF RISK:

* * *

14.8 [Precision's] Indemnification of [Ultra]: [Precision] shall release [Ultra] of any liability for, and shall protect, defend and indemnify [Ultra] from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of [Precision's] employees or [Precision's] subcontractors of any ther [sic] (inclusive of any agent or consultant engaged by [Precision]) or their employees, or [Precision's] invitees, on account of bodily injury, death or damage to property. [Precision's] indemnity under this Paragraph shall be without regard to and without any right to contribution from any insurance maintained by [Ultra] pursuant to Paragraph 13. If it is judicially determined that the monetary limits of insurance required hereunder or the indemnities voluntarily assumed under Subparagraph 14.8 (which [Precision] and [Ultra] hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnities, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall be automatically be amended to conform to the maximum monetary limits permitted by law.

14.9 [Ultra's] Indemnification of [Precision]: [Ultra] shall release [Precision] of any liability for, and shall protect, defend and indemnify [Precision] from and against all claims, demands, and causes of action of every kind and character, without

8

limit and without regard to the causes or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of [Ultra's] employees or [Ultra's] contractors or any ther [sic] (inclusive of any agent, consultant or subcontractor engaged by [Ultra]) or their employees, or [Ultra's] invitees, other than those parties identified in Subparagraph 14.8 on account of bodily injury, death or damage to property. [Ultra's] indemnity under this Paragraph shall be without regard to and without any right to contribution from any business maintained by [Precision] pursuant to Paragraph 14. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily assumed under Subparagraph 14.9 (which [Precision] and [Ultra] hereby agree will be supported either by available liability insurers, under which the insurer has no right of subrogation against the indemnities, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

* * *

14.13 Indemnity Obligation: EXCEPT AS OTHERWISE EXPRESSLY LIMITED HEREIN, IT IS THE INTENT OF THE PARTIES HERETO THAT ALL INDEMNITY OBLIGATIONS, RELEASES AND ASSUMPTIONS OF LIABILITIES BY SUCH PARTIES UNDER THE TERMS OF THIS CONTRACT, INCLUDING, WITHOUT LIMITATIONS, PARAGRAPHS 14.1 THROUGH 14.13 HEREOF, BE WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF (INCLUDING PREEXISTING CONDITIONS), BREACH OF EXPRESS OR IMPLIED WARRANTIES, NEGLIGENCE, STRICT LIABILITY, OR THE NEGLIGENCE OF ANY PARTY OR PARTIES, WHETHER SUCH NEGLIGENCE OR FAULT BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE (INCLUDING, WITHOUT LIMITATION, THE NEGLIGENCE, BREACH OF EXPRESS OR IMPLIED WARRANTIES, NEGLIGENCE, OR STRICT LIABILITY OF THE INDEMNIFIED PARTY OR PARTIES). The indemnities, releases and assumptions of liability and reasonable legal expenses extended by the parties hereto under the provisions of paragraphs 14.1 through 14.13 shall inure to the benefit of the party being indemnified, released or relieved of liability, its parent, holding and affiliated companies, non Operators and assigns, and their respective officers, directors, employees, agents and servants. This agreement shall create no right of action in any person not a party hereunder or specifically identified as an indemnitee hereto. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily assumed hereunder (which [Precision] and [Ultra] hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation

9

against the indemnitees, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law. TO THE EXTENT THIS PROVISION MAY CONFLICT OR IS PERCEIVED TO CONFLICT WITH ANY OTHER PROVISIONS OF THIS CONTRACT, THESE INDEMNITY PROVISIONS SHALL PREVAIL AND ANY RIGHTS OR REMEDIES OTHERWISE AVAILABLE FOR ANY CAUSES OF ACTION, INCLUDING WARRANTY-BASED CAUSES OF ACTION, ARE EXPRESSLY WAIVED AND RELEASED.

Doc. 88, Exhibit 3.

Upstream's insurer was Lexington Insurance Company. The Commercial General Liability Policy is at Doc. 84, Exhibit E. Endorsement #017 entitled "Additional Insured Required by Written Contract" provides, in part:

Section II -- Who Is An Insured is amended to include any person or organization you are required to include as an additional insured on this policy by a written contract or written agreement in effect during this policy period and executed prior to the "occurrence" of the "bodily injury" or "property damage."

This case can be considered within the framework of the Tenth Circuit's opinion in *Mid-Continent Casualty Company v. True Oil Company*, 767 F.3d 1000 (10th Cir. 2014), which will be discussed at length. Precision's arguments here suggest that resolution of this dispute is dependent on whether Ultra could require its contractors, including Precision, to be named or included as additional insured on Upstream's policy. The Court disagrees that is the most salient issue. Rather, the application of the Wyoming Anti-Indemnity Statute, Wyo. Stat. § 30-1-131, must be considered, as it modifies contracting parties' ability to obtain indemnification for their own negligence liability arising out of work done in the oil and gas industry. The Wyoming Anti-Indemnity Statute provides:

10

**§ 30-1-131. Provisions for indemnity in certain contracts; invalidity**

(a) All agreements, covenants or promises contained in, collateral to or affecting any agreement pertaining to any well for oil, gas or water, or mine for any mineral, which purport to indemnify the indemnitee against loss or liability for damages for:

(i) Death or bodily injury to persons;

(ii) Injury to property; or

(iii) Any other loss, damage, or expense arising under either (i) or (ii) from:

(A) The sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee or any independent contractor who is directly responsible to such indemnitee; or

(B) From any accident which occurs in operations carried on at the direction or under the supervision of the indemnitee or an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee, are against public policy and are void and unenforceable to the extent that such contract of indemnity by its terms purports to relieve the indemnitee from loss or liability for his own negligence. This provision shall not affect the validity of any insurance contract or any benefit conferred by the Worker's Compensation Law [§§ 27-14-101 through 27-14-805] of this state.

Can an indemnitee be indemnified for damages arising out of its own negligence for personal injuries sustained in the oil and gas industry? No. The limitation on what may often be permissible proper indemnification in arenas other than in the oil, gas or water or mining industry may not be avoided by entering into an agreement to obtain insurance or add the contractor as an additional insured on a policy. The Ultra-Upstream and the Ultra-Precision contracts are both subject to the Wyoming Anti-Indemnity Statute. Wyo. Stat. § 30-1-132 provides definition for the type of

contracts and agreements to which the Act applies:

### § 30-1-132. Provisions for indemnity in certain contracts; definition

The term "agreement pertaining to any well for oil, gas, or water, or mine for any mineral" as used in W. S. 30-1-131, means any agreement or understanding, written or oral, concerning any operations related to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or disposing of oil, gas or other minerals, or water, and designing, excavating, constructing, improving, or otherwise rendering services in or in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.

In *Mid-Continent Casualty Company v. True Oil Company,* 767 F.3d 1000 (10th Cir. 2014), the circuit court reviewed a declaratory judgment to determine whether the Mid-Continent commercial general liability policy issued to Pennant Service Company applied to True Oil in that case. The convoluted history of the relevant legal actions is described in exhaustive detail. In the 2014 opinion the appellate court was asked to review the district court's grant of summary judgment in favor of True Oil, which found that Mid-Continent breached its duty to defend and indemnify True Oil on the vicarious liability claim in the underlying action against True Oil by Pennant's employee, Van Norman. True Oil was the owner and operator of oil and gas wells and had entered into a Master Service Contract (MSC) with Pennant to work on a well. The MSC included a provision where Pennant agreed to indemnify True Oil "from and against all claims, damages, losses, ... causes of action, suits, judgments, penalties, fines and expenses, including attorney fees, of any nature, kind or description whatsoever" resulting from either Pennant or True Oil's negligence. *Id.* at 1002.

12

Pennant was insured with Mid-Continent under a CGL policy, in which Mid-Continent agreed to insure Pennant against damages because of bodily injury "[a] assumed in a contract or agreement that is an 'insured contract," including "reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured" as long as "(a) [l]iability to such party for, or for the cost of, that party's defense has also been assumed in the same 'insured contract'; and (b) [s]uch attorney fees and litigation expenses are for defense of that party against a civil ... proceeding in which damages to which this insurance applies are alleged." *Id.*

In 2001, Pennant's employee, Van Norman, was injured in an accident at True Oil's well. Van Norman filed a negligence suit against True Oil in state court on October 26, 2001. In November, pursuant to the MSC indemnity provision, True Oil requested indemnification for its defense costs, attorneys' fees, and any award Van Norman might recover from True Oil. Mid-Continent refused to defend or indemnify True Oil based on the Wyoming Anti-Indemnity Statute, Wyo. Stat. § 1-30-131, invalidating agreements related to oil or gas wells that "indemnify the indemnitee against loss or liability for damages for ... bodily injury to persons." *Id.* at 1002-1003.

Later in May of 2002, True Oil sued Mid-Continent in federal court for declaratory relief, and also asserted other claims including breach of contract (the CGL policy). Mid-Continent's summary judgment motion was granted, with a determination that the MSC's indemnity provision, when invoked with respect to claims of the indemnitee's (True Oil's) own negligence violated Wyo. Stat. § 1-30-131 and was unenforceable as a matter of public policy. The district court found Mid-Continent was not required to defend or indemnify True Oil in the Van Norman suit because "'where an indemnification provision in a MSC is void and unenforceable, the insurer never actually assumed

any of the indemnitee's liabilities under the policy.'" *Id.*

Van Norman amended his complaint in state court on March 16, 2005 to bring a vicarious liability claim against True Oil for Pennant's negligence causing him injury. True Oil filed a third-party complaint against Pennant claiming indemnification. Mid-Continent offered to provide a conditional defense to the vicarious liability claim in the state court action under a reservation of rights. Mid-Continent's offer to defend was refused by True Oil because they were unable to agree on terms of the defense. True settled with Van Norman and Pennant stipulated to the reasonableness of the settlement although it did not participate in the negotiations. *Id.*

True Oil went back to federal court on September 28, 2005, seeking declaratory relief as to its rights and obligations in light of the amended complaint and its newly added vicarious liability claim against True Oil. The Tenth Circuit noted, 767 F.3d at 1003, that while the September 2005 suit was pending, it had affirmed the district court's entry of summary judgment, not knowing of the amended complaint in the state court action. In August of 2006, the federal district court granted True Oil's summary judgment motion, finding Mid-Continent must defend and indemnify in the underlying litigation on the vicarious liability claim. The district court distinguished "True Oil's efforts to obtain indemnification for *its own negligence* in the first case and its efforts to obtain indemnification for *vicarious liability* from Pennant's negligence, the court held that where a claim of vicarious liability exists, the Wyoming Anti-Indemnity Statute, § 30-1-131, does not render the agreement void or unenforceable with respect to that claim." *Id.* (Italics in original.) The district court stayed further action pending conclusion of the remaining third-party action between True Oil and Pennant in the state court litigation. *Id.* at 1003.

14

Following a bench trial, the state district court found Pennant had "breached its contract with True Oil, and that the damages were equal to the settlement amount True Oil paid Van Norman." *Id.* at 1004. The state district court ordered Pennant to also pay attorneys' fees beginning from the time the complaint was amended. Pennant appealed. The Wyoming Supreme Court held that "by stipulating to the reasonableness of the $500,000.00 settlement paid by True Oil to Van Norman, Pennant supported True Oil's 'potential liability' for Pennant's negligence." The Supreme Court held that True Oil was entitled under the MSC to attorneys' fees incurred in defending itself from the beginning of the state court action. It affirmed the state district court's breach of contract finding and the $500,000.00 damages award and extended True Oil's entitlement to attorneys' fees from the date Van Norman filed his original complaint. Thereafter, consistent with the resolution of the state court action, the federal district court awarded True Oil $500,000.00, attorneys' fees from October 2001 to December 7, 2005 and pre-and postjudgment interest on both amounts. *Id.*

Thus, Mid-Continent appealed and the matter once more returned to the Tenth Circuit for review, challenging, among other things, the federal district court's determination that Mid-Continent had a duty to indemnify True Oil against the Van Norman vicarious liability claims. The Tenth Circuit quoted from the district court's opinion stating that Pennant's agreement to indemnify True Oil in the MSC was void only to the extent that it was one which "purported to relieve True Oil from the loss of liability caused by True Oil's own negligence. The agreement providing for indemnification from all claims and damages caused by the negligence of others, which would include the claims of vicarious liability in this case, is valid and enforceable under Wyoming law." *Id.* at 1006. Under the CGL policy, Mid-Continent had agreed to cover Pennant's liability for

15

damages "[a]ssumed in a contract or agreement that is an 'insured contract.' . . . Thus, although the

CGL policy generally excluded contractual liability from coverage, it excepted damages assumed

in an insured contract." *Id.* The policy provided an "insured contract" included:

> [t]hat part of any other contract or agreement pertaining to your business ... under
> which you assume the tort liability of another party to pay for "bodily injury" or
> "property damage" to a third person or organization. Tort liability means a liability
> that would be imposed by law in the absence of any contract or agreement.

*Id.* at 1006.

The Tenth Circuit addressed Mid-Continent's challenge to the district court's holding that

Mid-Continent had a duty to indemnify True Oil against the allegations of vicarious liability and that

the agreement to indemnify was void only to the extent that it purported to relieve True Oil from loss

or liability caused by its own negligence. *Id.* at 1006. After reviewing Wyoming law and decisions

of the state court, the circuit court found

> . . . that it was bound by the Wyoming Supreme Court's holding that the indemnity
> agreement is a "valid and enforceable part of the MSC" to the extent that it
> indemnifies True Oil for its vicarious liability. *Pennant,* 249 P.3d at 710. As such,
> it is an "insured contract" under Mid-Continent's CGL policy, and the damages
> assumed therein are covered by the policy.

*Id.* at 1008-1009. Logically, it follows from that analysis that to the extent the indemnity agreement

seeks indemnity for the indemnitee's own negligence, it is not an insured contract covering damages

under the policy.

Parties may enter into agreements to obtain insurance with policies agreeing to indemnify

others. Failures to comply with such contractual requirements may be pertinent to claims such as

breach of contract or promissory estoppelthat an additional insured or indemnitee under a policy

might bring against a named insured or indemnitor. But importantly, this does not preclude

consideration as to whether insurance coverage and provisions for indemnification of an additional insured come within the ambit of the Wyoming Anti-Indemnity Statute. The Wyoming Anti-Indemnity Statute, as seen above in the extensive discussions of the *Mid-Continent/True Oil* dispute, may modify or void such indemnification provisions entirely. This is true for contractual agreements, as defined by Wyo. Stat. § 30-1-132, that are subject to the Wyoming Anti-Indemnity Statute, Wyo. Stat. § 30-1-101.

The facts of this case support a conclusion that the attempt by Precision to obtain indemnification from Lexington for Precision's own negligence fails. A brief refresher of the contractual relationships is appropriate here. Ultra was the leaseholder of the wellsite. Ultra contracted with Upstream under the Master Service Agreement to manage the wellsite. The Ultra-Upstream contract required Upstream to hire an independent contractor/consultant, Jent, to provide services at the wellsite. Upstream contracted with Jent; Ultra contracted with Precision for drilling operations. Precision owned and operated the Grey Wolf Drilling Rig, and was engaged pursuant to the contract with Ultra.

Upstream was insured by Lexington. Grey Wolf, Inc. and Precision Drilling Oilfield Services were insured by the Lloyd's group of defendants. Jent was injured on December 27, 2008 at the rig, when the derrick owned and operated by Precision collapsed to the ground while being broken down and readied to move to another location. Jent sued Precision alleging Precision was negligent by failing to properly secure bolts on the rig and not loosening those bolts until other secure and safety precautions were taken in preparation. Upstream, insured by Lexington, was not sued nor was Ultra sued in the underlying action. The complaint alleged only negligence of Precision and no other

17

party. Doc. 88, Exhibit 7. Precision demanded defense and indemnification of Ultra; Ultra in turn made demand for defense and indemnification upon Upstream. Upstream's insurer, Lexington, undertook defense of the underlying action under a reservation of rights. See Doc. 88, Exhibits 9, 10. The underlying action between Jent and Precision was settled during mediation.

Policy provisions at issue here are not enforceable to the extent that Precision is seeking indemnification for its own negligence. That Precision could be an additional insured on the Upstream policies in other contexts does not create a work-around negating application of the Wyoming Anti-Indemnity Statute. In the absence of the Wyoming Anti-Indemnity Statute, the Court's findings here might be otherwise. However, there is nothing in the *Mid-Continent Casualty Company v. True Oil Company* case, 767 F.3d 1000 (10th Cir. 2014), that compels the Court to conclude that the Wyoming Anti-Indemnity Statute does not apply in this case. The statute precludes coverage of Precision; Precision may not be indemnified for its own negligence in these circumstances. As such, Lexington is entitled to recover from the Lloyd's group of defendants the costs and fees incurred in defense of Precision in the underlying Jent action. Precision and the Lloyd's group of defendants are not entitled to be reimbursed the costs to settle the Jent litigation, nor may attorneys' fees and interest be recovered by the Lloyd's group of defendants. The motion for summary judgment filed by the Lloyd's group of defendants will be denied and Lexington's motion for summary judgment as to that group of defendants will be granted.

Finally, the Court agrees with Upstream that it is entitled to summary judgment in this case. No relief has been sought against Upstream; no facts are alleged against Upstream; no causes of action are asserted against Upstream with the exception of Lexington's request that the Court prevent

Upstream and other defendants from bringing later actions to recover benefits under policies issued to Upstream.  In the absence of facts that suggest a claim has been made for benefits, the Court is unable to divine any actual, rather than hypothetical or speculative, claim that Lexington may have against Upstream.   Additionally, it is worth noting that Upstream itself has not asked for a declaration of rights or policy interpretation on the policies.  Nothing indicates that Upstream is a necessary party, even if it is the named insured on the policies. Fed. R. Civ. P. 19 provides, in relevant part:

> **1) Required Party.** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
> >
> > **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> >
> > > **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
> > >
> > > **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Upstream's rights under the Lexington policy are not affected.  Any disposition in this regard would be worthless and merely advisory.

Title 28 U.S.C. § 2201 requires an actual controversy in a civil action that is brought seeking a declaration of rights and other legal relations of any interested parties. See also *St. Paul Fire & Marine Insurance Company v. Aetna Casualty and Surety Company*, 357 F.2d 315, 316 (10th Cir.

19

1966).[4]  The interest in adjudication here is complete without joining Upstream; it is not an

indispensable or necessary party.  The Court finds that Upstream's motion for summary judgment

should be granted.


Accordingly, it is hereby


**ORDERED** that the motion for summary judgment filed by the Lloyd's group of defendants

(Doc. 83) shall be, and is, **DENIED.  It is further**


**ORDERED** that the motion for summary judgment filed by plaintiff Lexington Insurance

Company (Doc. 87) shall be, and is, **GRANTED.  It is further**

---

[4]"Pointing to the undisputed facts that Aetna is not a named party to the contract of insurance made by St. Paul with its insured and that the insured is not joined as a party in the subject action, St. Paul asserts that jurisdiction fails. The argument misconceives the nature of declaratory relief. Section 2201 contemplates a pragmatic approach to the determination of legal relations in controversy between interested parties and a further grant of relief in those cases where such is possible and proper under section 2202. The instant case is almost classic in application. Both companies insured the same car; both insurers concede their obligation to the insured to pay the entire loss if the other does not; both policies contain pro rata payment for loss provisions. Joinder of the insured would serve no useful purpose for he is fully protected regardless of the outcome of the intercarrier controversy. The interest in adjudication is complete without joining the insured and he is not an indispensible party. See 6 Moore, Federal Practice § 57.25. The duties and rights of the insurers as to the insured's indemnity against loss created an actual controversy within the meaning of 28 U.S.C. § 2201 which could appropriately be adjudicated by a declaratory judgment action. E.g., *West American Ins. Co. v. Allstate Ins. Co.*, 10 Cir., 295 F.2d 513; *Lumbermens Mutual Casualty Co. v. Borden Co.*, S.D.N.Y., 241 F. Supp. 683 and cases cited therein. See *Bennett v. Preferred Acc. Ins. Co.*, 10 Cir., 192 F.2d 748; *St. Paul-Mercury Indemnity Co. v. Martin*, 10 Cir., 190 F.2d 455."

**ORDERED** that Lexington Insurance Company recover costs and fees expended in defense of Precision in the underlying action from the Lloyd's group of defendants. **It is further**

**ORDERED** that the motion for summary judgment filed by Upstream International, LLC (Doc. 85) shall be, and is, **GRANTED.**

**Judgment will be entered accordingly.**

Dated this _18th_ day of December 2014.

ALAN B. JOHNSON
UNITED STATES DISTRICT JUDGE